UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 15-cv-22660-DPG

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, and STATE FARM
FIRE and CASUALTY COMPANY,

Plaintiffs,

vs.

MIAMI MEDICAL CARE CENTER, INC.;
LORENZO JESUS FELIPE; JORGE FELIX FELIPE
PUPO; ODALYS FELIPE; FELIPE FAMILY LLC;
FELIPE FAMILY IRREVOCABLE SPECIAL
NEEDS TRUST; ROBERTO LOPEZ HERNANDEZ;
PRIMO THERAPY CENTER, INC.; MARCOS
PADRON; AND BARRY THERAPY CENTER, INC.

Defendants.
_____/

## DEFAULT FINAL JUDGMENT AGAINST ALL DEFENDANTS

This cause came before the Court upon Plaintiffs' Motion for Entry of Default Final Judgment as to Defendants, Miami Medical Care Center, Inc. ("Miami Medical"), Lorenzo Jesus Felipe ("Lorenzo Felipe"), Jorge Felix Felipe Pupo ("Jorge Felipe"), Odalys Felipe, Felipe Family LLC ("Felipe LLC"), Felipe Family Irrevocable Special Needs Trust ("Felipe Trust"), Roberto Lopez Hernandez ("Roberto Lopez"), Primo Therapy Center, Inc. ("Primo"), Marcos Padron ("Padron"), and Barry Therapy Center, Inc. ("Barry Therapy"), pursuant to the Clerk's Defaults [ECF Nos. 16, 19, 20, 24, 25, 29, 33, 47, 52, 65].  The Court has carefully considered the Motion, the record, and the applicable law, and is otherwise fully advised.

Based thereon, it is **ORDERED** and **ADJUDGED** as follows:

1. Final Judgment is entered in favor of Plaintiffs State Farm Mutual Automobile Insurance Company and State Farm Fire & Casualty Company ("Plaintiffs") and against

Defendants Miami Medical, Lorenzo Felipe, Felipe LLC, Felipe Trust, Odalys Felipe, and Roberto Lopez on Count I (Unjust Enrichment) of Plaintiffs' Complaint [ECF No. 1].

2. Final Judgment is entered in favor of Plaintiffs and against Defendants Primo, Jorge Felipe, Felipe LLC, and Felipe Trust on Count II (Unjust Enrichment) of Plaintiffs' Complaint [ECF No. 1].

3. Final Judgment is ENTERED in favor of Plaintiffs and against Defendant Miami Medical on Count III (Declaratory Relief pursuant to 28 U.S.C. § 2201) of Plaintiffs' Complaint [ECF No. 1].

4. Final Judgment is ENTERED in favor of Plaintiffs and against Defendant Primo on Count IV (Declaratory Relief pursuant to 28 U.S.C. § 2201) of Plaintiffs' Complaint [ECF No. 1].

5. Final Judgment is ENTERED in favor of Plaintiffs and against Defendants Lorenzo Felipe and Roberto Lopez on Count V (Conspiracy) of Plaintiffs' Complaint [ECF No. 1].

6. Final Judgment is ENTERED in favor of Plaintiffs and against Defendants Jorge Felipe and Marcos Padron on Count VI (Conspiracy) of Plaintiffs' Complaint [ECF No. 1].

7. Final Judgment is ENTERED in favor of Plaintiffs and against Defendants Barry Therapy and Jorge Felipe on Count VII (Unjust Enrichment) of Plaintiffs' Complaint [ECF No. 1].

8. Final Judgment is ENTERED in favor of Plaintiffs and against Defendant Barry Therapy on Count VIII (Declaratory Relief pursuant to 28 U.S.C. § 2201) of Plaintiffs' Complaint [ECF No. 1].

9.      All allegations in the Complaint [ECF No. 1] against the Defendants are deemed well-pleaded and admitted, and there is a sufficient basis in the pleading for the judgment entered.  *See Intelsat Corp. v. Multivision TV LLC*, No. 10-21982-CIV, 2010 WL 5437261, at *2 (S.D. Fla. Dec. 27, 2010).

## BACKGROUND

This matter involves an unlawful auto insurance billing scheme perpetrated by Defendants to circumvent Florida law and obtain Personal Injury Protection ("PIP") benefits. [ECF No. 1 ¶¶ 3-4, 33-88].

Plaintiffs are automobile insurers and provide their insureds with Personal Injury Protection ("PIP") benefits intended to compensate the insureds for reasonable medical expenses incurred as a result of a covered automobile incident.  [ECF No. 1 ¶ 6].  Pursuant to the Florida Motor Vehicle No-Fault Law, Plaintiffs are obligated to provide up to $10,000.00 in PIP benefits by paying 80% of all reasonable, medically necessary and related medical bills for services or care that was lawful at the time rendered. (Fla. Stat. § 627.736(1)(a)).

Defendants Miami Medical, Primo, and Barry Therapy (collectively, the "Clinics") were health care clinics operating in Miami-Dade County.  [ECF No. 1 ¶¶ 7-8, 14]. Defendants Lorenzo Felipe, Jorge Felipe, Odalys Felipe, Felipe LLC, Felipe Trust, Roberto Lopez, and Marcos Padron are individuals and entities that participated in the Clinics' unlawful operations and/or received money from the Clinics. [ECF No. 1 ¶¶ 9-13, 31-88].

Section 627.736(1)(a), Florida Statutes, expressly states that reimbursement for PIP Benefits shall be provided "only for such services and care that are lawfully provided, supervised, ordered, or prescribed" by certain licensed healthcare practitioners. [ECF No. 1 ¶¶ 89-91].  An insurer or insured is not required to pay a claim or charges for any service or

3

treatment that was not lawful at the time rendered. [ECF No. 1 ¶¶ 89-91]; Fla. Stat. § 627.736(5)(b)(1)(b). Moreover, health care clinics that fail to operate lawfully are not entitled to retain the monies paid to them by insurers such as Plaintiffs. *State Farm v. Silver Star Health and Rehab*, 739 F.3d 579 (11th Cir. 2013).

Pursuant to Section 400.991 and 400.9905 of the Health Care Clinic Act ("HCCA"), to lawfully operate, a health care clinic must either obtain a license through Florida's Agency for Health Care Administration ("AHCA") or qualify for an exemption, such as being "wholly owned by a licensed health care practitioner" such as a chiropractor. [ECF No. 1 ¶¶ 5, 15-24]; Fla. Stat. § 400.9905(4)(g) (2009). Under this exemption, the licensed health care practitioner must own and supervise the business activities of the clinic and remain legally responsible for the entity's compliance with all federal and state laws. [ECF No. 1 ¶¶ 17-24]; Fla. Stat. § 400.9905(4)(g). If the health care practitioner fails to supervise the clinic's business activities or does not remain responsible for legal compliance, then the clinic does not lawfully qualify for the exemption. [ECF No. 1 ¶¶ 17-24]; Fla. Stat. § 400.9905(4)(g); *see also State Farm Mut. Auto. Ins. Co. v. Medical Serv. Ctr. of Fla., Inc.*, 103 F. Supp. 3d 1343 (S.D. Fla. 2015).

Various indicia of ownership aid in the determination of whether a clinic is "wholly owned," including:

>  a. Ownership of the stock of a corporation and the exercise of corporate powers;
>  b. The extent of any capital investment in the business;
>  c. The right to profit from the business and the risk of loss;
>  d. The power to sell the business or cause it to cease operations; and
>  e. The extent to which an individual participates in the management and control of the business operations. *State Farm Fire & Cas. Co. v. Silver Star Health and*

4

*Rehab*, 739 F.3d 579, 585 (11th Cir. 2013); *State Farm Mut. Auto. Ins. Co. v. Medical Serv. Ctr. of Fla., Inc.*, 103 F. Supp. 3d 1343 (S.D. Fla. 2015).

Defendants misrepresented to AHCA that Miami Medical was owned by Stephen Lovell, D.C. ("Dr. Lovell") and that Primo was owned by John Romano, D.C. ("Dr. Romano") in order to qualify for the above-described exemption from the AHCA licensure requirements and unlawfully obtain insurance payments. [ECF No. 1 ¶¶ 33-34, 69, 73-76]. Defendants also misrepresented in corporate documents that Barry Therapy was owned by Barry Sutphin, D.C. ("Dr. Sutphin"), although, Dr. Sutphin confirmed in an affidavit that he was not the whole owner. [ECF No. 1 ¶¶ 58-67 & Ex. 3]. To further perpetrate the unlawful ownership arrangement, Barry Therapy operated without a license under a self-determined "wholly owned" exemption. [ECF No. 1 ¶¶ 14, 57-61, 67 & n. 2]. In actuality, Miami Medical was owned and controlled by Lorenzo Felipe (not Dr. Lovell), and Primo and Barry Therapy were owned by Jorge Felipe (not Dr. Romano and Dr. Sutphin, respectively). [ECF No. 1 ¶¶ 34-36, 48-56, 61-66, 69, 74-79]. These misrepresentations allowed the Clinics to obtain exemptions from AHCA licensure and operate without state oversight, enabling the Clinics to obtain insurance payments from Plaintiffs, which benefited the Defendants. [ECF No. 1 ¶¶ 33-34, 37, 50-52, 75-76, 87, 94-97 & n. 6-7, Exs. 13-18].

All Defendants had knowledge of, participated in, and benefited from the unlawful ownership scheme by, among other things, receiving exorbitant amounts of money from the Clinics. [ECF No. 1 ¶¶ 9-14, 34, 47, 76, 100-02, 106-08, 130-32 & n. 6].

By having neither a valid license nor a valid exemption, each Clinic failed to comply with the requirements for health care clinic licensure. [ECF No. 1 ¶¶ 89-93, 99-118, 124-38]. As a result, the services purportedly provided by Miami Medical, Primo, and Barry Therapy were

unlawful and all charges or reimbursement claims billed to Plaintiffs by or on behalf of Miami Medical, Primo, and Barry Therapy are non-compensable and unenforceable. [ECF No. 1 ¶¶ 89-93, 99-118, 124-38].

## DEFAULT JUDGMENT STANDARD

Federal Rule of Civil Procedure 55(b)(2) authorizes a court to enter a final judgment of default against a party who has failed to plead in response to a complaint. *See Intelsat Corp. v. Multivision TV LLC*, No. 10-21982-CIV, 2010 WL 5437261, at *2 (S.D. Fla. Dec. 27, 2010). Granting a motion for default judgment is within the trial court's discretion. *See Id*. (quoting *DirecTV, Inc. v. Huynh,* 318 F. Supp. 2d 1122, 1127 (M.D. Ala. 2004) and *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir. 1975)). The defendant, by his default, admits the plaintiff's well-pleaded allegations. *See Nishimatsu,* 515 F.2d at 1206. Because the defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law, the court must first determine whether there is a sufficient basis in the pleading for the judgment entered. *See id; Buchanan v. Bowman,* 820 F.2d 359, 361 (11th Cir. 1987) ("[L]iability is well-pled in the complaint, and is therefore established by the entry of default. . . .").

## ANALYSIS

Defendants were aware of the HCCA licensure requirements, but conspired to circumvent them and unlawfully obtain exemptions by having licensed chiropractors pose as owners. [ECF No. 1 ¶¶ 33-88]. However, when the above-described indicia of ownership are considered, it is clear that the licensed chiropractors did not "wholly own" the Clinics.

Miami Medical was never wholly owned and never controlled by Dr. Lovell, as Dr. Lovell never supervised its activities and operations, was never was responsible for its legal compliance, and was rarely present at Miami Medical. [ECF No. 1 ¶¶ 34-56, Ex. 3 at ¶ 8].

6

Rather, Lorenzo Felipe owned and controlled Miami Medical for the benefit of the Felipe family members, associates, and entities, including that he – and not Dr. Lovell – (1) negotiated the lease for Miami Medical's office space [ECF No. 1 ¶ 35]; (2) controlled Miami Medical's legal disputes [ECF No. 1 ¶¶ 38-44]; (3) controlled Miami Medical's bank accounts (along with Roberto Lopez) and signed 95% of the checks drawn on Miami Medical's Bank of America Account [ECF No. 1 ¶¶ 48-54]; and (4) listed himself as "owner" on eleven checks he wrote to himself drawn on Miami Medical's account. [ECF No. 1 ¶¶ 55-56; ECF No. 61 at Ex. 19]. Further, the Felipe family and its entities received approximately $916,000 from Miami Medical's bank accounts, while Dr. Lovell received only $192,950. [ECF No. 1 ¶¶ 49-51].

Because Miami Medical was owned and controlled by Lorenzo Felipe for the benefit of the Felipe family, and *not* wholly owned by Dr. Lovell as represented to AHCA, the clinic did not qualify for an AHCA exemption and operated unlawfully. [ECF No. 1 ¶¶ 89-93]. Accordingly, Plaintiffs are not obligated to pay bills submitted by Miami Medical and are entitled to recover payments already made. [ECF No. 1 ¶¶ 89-91].

Barry Therapy was never wholly owned or controlled by Dr. Sutphin, as Dr. Sutphin did not control or supervise Barry Therapy's operations, finances, legal compliance, or any other aspect of the clinic, nor did Dr. Sutphin invest any money or receive any profit distributions. [ECF No. 1 ¶¶ 61-67 & Ex. 3]. Dr. Sutphin admitted he never owned Barry Therapy. [ECF No. 1 ¶ & Ex. 3 at 21]. Rather, Jorge Felipe – and not Dr. Sutphin – owned and controlled Barry Therapy. [ECF No. 1 ¶ 65].

Because Dr. Sutphin never owned, controlled, or supervised Barry Therapy, despite being listed as its owner on corporate documents, Barry Therapy operated without a license, without an exemption, and, thus, unlawfully. [ECF No. 1 ¶¶ 67-68]. Accordingly, Plaintiffs are not

7

obligated to pay bills submitted by Barry Therapy and are entitled to recover payments already made. [ECF No. 1 ¶¶ 89-91].

Primo was never wholly owned or controlled by Dr. Romano, as Dr. Romano did not invest any money in Primo, and did not control Primo's finances, operations, or legal compliance. [ECF No. 1 ¶¶ 77-79, 85-87]. Rather, Jorge Felipe owned and controlled Primo for the benefit of the Felipe family. [ECF No. 1 ¶¶ 77-87]. Jorge Felipe signed all the checks drawn on Primo's account. (ECF No. 1 ¶¶ 87-88). Further, the Felipe family and its entities received $775,000 from Primo's account, while Dr. Romano and his entities received only $13,000. [ECF No. 1 ¶ 87].

Because Dr. Romano never owned, controlled, or supervised Primo, Primo did not qualify for an exemption from licensure. [ECF No. 1 ¶¶ 69-88]. Accordingly, Primo operated without a health care clinic license and the treatment rendered at Primo was unlawful. [ECF No. 1 ¶¶ 69-88]. Therefore, Plaintiffs are not obligated to pay any of the claims Primo submitted and are entitled to recover payments already made. [ECF NO. 1 ¶¶ 89-91].

Despite the failure of Miami Medical, Primo, and Barry Therapy to obtain valid licenses or exemptions through AHCA, the Clinics billed Plaintiffs for services and treatments purportedly provided to Plaintiffs' insureds. [ECF No. 1 ¶¶ 94-96; Ex. A ¶¶ 6-22].

Based on the Clinics' bills, Plaintiffs made insurance payments in the following amounts:

    a.    Plaintiffs paid $945,334.67 to Miami Medical from 2010-2011, under the mistaken belief that the services provided by Miami Medical were lawfully provided pursuant to Florida law. Exhibit A, Affidavit of Sarah Bloodgood, at ¶¶ 7-10; ECF No. 1 ¶ 94;

    b.    Plaintiffs paid $1,276,896.27 to Primo from 2009-2010, under the mistaken belief that the services provided by Primo were lawfully provided pursuant to Florida law. Exhibit A, Affidavit of Sarah Bloodgood, at ¶¶ 12-15; ECF No. 1 ¶ 94; and

      c.      Plaintiffs paid $119,594.55 to Barry Therapy from 2011-2012, under the mistaken belief that the services provided by Barry Therapy were lawfully provided pursuant to Florida law. Exhibit A, Affidavit of Sarah Bloodgood, at ¶¶ 16-20; ECF No. 1 ¶ 94.

Plaintiffs are entitled to reimbursement of the above amounts, as the services provided at each Clinic were not lawfully provided and, therefore, the corresponding bills are non-compensable under Florida law. [ECF No. 1 ¶¶ 95-96].

The following outstanding charges remain unpaid:

      d.      There are outstanding claims totaling $146,956.86 from Miami Medical Exhibit A, Affidavit of Sarah Bloodgood, at ¶ 7; ECF No. 1 ¶ 96;

      e.      There are outstanding claims totaling $233,010 from Primo Exhibit A, Affidavit of Sarah Bloodgood, at ¶ 12; ECF No. 1 ¶ 96; and

      f.      There are outstanding claims totaling $10,834.38 from Barry Therapy Exhibit A, Affidavit of Sarah Bloodgood, at ¶ 17; ECF No. 1 ¶ 96.

As a result of Defendants' unlawful circumvention of the HCCA's licensing requirements, the services purportedly provided by Miami Medical, Primo, and Barry Therapy were unlawful and, therefore, all charges or reimbursement claims billed to Plaintiffs by or on behalf of Miami Medical, Primo, and Barry Therapy are non-compensable. [ECF No. 1 ¶¶ 89-91, 99-110].

### **Counts I, II, and VII Unjust Enrichment**

To state an actionable claim for unjust enrichment, a plaintiff must allege: (1) the plaintiff conferred a benefit on the defendant, (2) of which the defendant was aware and accepted, and (3) it would be inequitable for the defendant to retain the benefits. *Allstate Ins. Co. v. Vizcay*, 826 F.3d 1326, 1330-31 (11th Cir. 2016) (affirming jury verdict on unjust enrichment claim in favor of insurer against unlawfully operated clinic); *Med. Serv. Ctr.*, 103 F. Supp. 3d at 1355 (granting summary judgment in favor of State Farm on its unjust enrichment claim against unlawfully

operated health care clinic which was owned by a lay person but acted like it was owned by a licensed medical professional).

Despite knowledge that Miami Medical's services were not "lawfully provided" as required by Florida law, Miami Medical, Lorenzo Felipe, Felipe LLC, Felipe Trust, Odalys Felipe, Roberto Lopez, Primo, Jorge Felipe, Felipe LLC, Felipe Trust, Barry Therapy, and Jorge Felipe voluntarily accepted and retained insurance payments from Plaintiffs in the amount of $2,341,825.49. [ECF No. 1 ¶¶ 94, 99-110, 129-34; Ex. A, Affidavit of Sarah Bloodgood at ¶¶ 7-20]. The retention of these benefits was, and is, wrongful because these monies were obtained for purported health care services provided by Miami Medical in violation of applicable Florida law. [ECF No. 1 ¶¶ 89-91, 99-104].

As a result, Plaintiffs have been harmed by Defendants' wrongful actions because Plaintiffs would not have paid the $2,321,825.49 if it had known at the time these claims were paid that the services were not provided pursuant to Florida law and, therefore, were not reimbursable pursuant to Florida law. [ECF No. 1 ¶¶ 89-91, 99-104]. Accordingly, it would be unjust under these circumstances to allow the Defendants to continue to retain these benefits despite their misconduct. [ECF No. 1 ¶¶ 89-91, 99-110].

**Counts III, IV, and VIII – Declaratory Relief Pursuant to 28 U.S.C. § 2201**

There is an actual case and controversy between Plaintiffs and Miami Medical, Primo, and Barry Therapy as to the charges submitted to Plaintiffs by Miami Medical, Primo, and Barry Therapy which have not been paid. [ECF No. 1 ¶¶ 96, 111-18, 136 & Ex. 16; Ex. 17; Ex. 18; Ex. A, Affidavit of Sarah Bloodgood at ¶ 7, 12]. Miami Medical, Primo, and Barry Therapy engaged in an unlawful license circumvention scheme designed to deceive and mislead Plaintiffs. [ECF No. 1 ¶113]. Accordingly, because the services billed to Plaintiffs by Miami

Medical, Primo, and Barry Therapy were not lawful nor lawfully provided, this Court declares that Plaintiffs are not obligated to pay (a) any of the amounts submitted by Miami Medical, Primo, or Barry Therapy which have not been paid; and (b) any claims that have or may be submitted for services provided at Miami Medical, Primo, or Barry Therapy in the future that arise out of treatment or services that were not lawful or "lawfully provided" as described herein.  [ECF No. 1 ¶¶ 89-91, 114].

### Count V and VI– Conspiracy

To state an actionable claim for conspiracy, a plaintiff must allege (1) an agreement between two or more parties, (2) to do an unlawful act or to do a lawful act by unlawful means, (3) the doing of some overt act in pursuance of the conspiracy, and (4) damage to plaintiff as a result of the acts done under the conspiracy. *United Tech. Corp. v. Mazer*, 556 F.3d 1260, 1271 (11th Cir. 2009) (citing *Charles v. Fla. Foreclosure Placement Ctr., LLC*, 988 So. 2d 1157, 1159-60) (Fla. 3d DCA 2008)).

As alleged in Count V, Lorenzo Felipe, Roberto Lopez agreed, conspired, and collaborated to circumvent mandatory licensure laws and perpetrate the unlawful clinic ownership scheme in order to obtain insurance proceeds. [ECF No. 1 ¶ 120-21]. In furtherance of the scheme, Lorenzo Felipe and Roberto Lopez acted in concert to set up, manage, and operate Miami Medical, to avoid state licensure laws, to treat patients, and to bill Plaintiffs for services unlawfully rendered. [ECF No. 1 ¶ 122].  Lorenzo Felipe and Roberto Lopez's unlawful acts in pursuance of the conspiracy caused substantial harm to Plaintiffs by causing Plaintiffs to pay $945,334.67 in insurance proceeds to Miami Medical. [ECF No. 1 ¶ 123].  Accordingly, Lorenzo Felipe and Roberto Lopez are liable to Plaintiffs for conspiracy. [ECF No. 1 ¶ 123].

As alleged in Count VI, Jorge Felipe and Marcos Padron agreed, conspired, and collaborated to circumvent mandatory licensure laws and perpetrate the unlawful clinic ownership scheme in order to obtain insurance proceeds. [ECF No. 1 ¶ 125-26]. In furtherance of the scheme, Jorge Felipe and Marcos Padron acted in concert to set up, manage, and operate Primo and Barry Therapy, to avoid state licensure laws, to treat patients, and to bill Plaintiffs for services unlawfully rendered. [ECF No. 1 ¶ 127]. Lorenzo Felipe and Roberto Lopez's unlawful acts in pursuance of the conspiracy caused substantial harm to Plaintiffs by causing Plaintiffs to pay $1,396,490.82 in insurance proceeds to Primo and Barry Therapy. [ECF No. 1 ¶ 128]. Accordingly, Lorenzo Felipe and Roberto Lopez are liable to Plaintiffs for conspiracy. [ECF No. 1 ¶ 128].

## CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1. The Plaintiffs' Motion for Entry of Default Final Judgment as to all Defendants **[ECF No. D.E. 67]** is **GRANTED.**

2. Final judgment is entered in favor of Plaintiffs and against Defendants Miami Medical, Lorenzo Felipe, Felipe LLC, Felipe Trust, Odalys Felipe, and Roberto Lopez on Count I – Unjust Enrichment. Plaintiffs shall have and recover as its money damages from Miami Medical, Lorenzo Felipe, Felipe LLC, Felipe Trust, Odalys Felipe, and Roberto Lopez the principal sum of $945,334.67, reflected in Exhibit 13 to the Complaint [ECF No. 1] and identified in the Affidavit of Sarah Bloodgood, attached to Plaintiffs' Motion for Default Final Judgment, plus post-judgment interest thereon from the date hereof until paid, to be calculated as provided by 28 U.S.C. §1961, for all of which let execution issue

fourteen days after the entry of this Final Judgment. This Default Final Judgment is joint and several.

3. Final judgment is entered in favor of Plaintiffs and against Defendants Primo, Jorge Felipe, Felipe LLC, and Felipe Trust on Count II – Unjust Enrichment.  Plaintiffs shall have and recover as its money damages from Primo, Jorge Felipe, Felipe LLC, and Felipe Trust the principal sum of $1,276,329.18, reflected in Exhibit 14 to the Complaint and identified in the Affidavit of Sarah Bloodgood, attached to Plaintiffs' Motion for Default Final Judgment, plus post-judgment interest thereon from the date hereof until paid, to be calculated as provided by 28 U.S.C. §1961, for all of which let execution issue fourteen days after the entry of this Final Judgment. This Default Final Judgment is joint and several.

4. Final judgment is entered in favor of Plaintiffs and against Defendant Miami Medical on Count III – Declaratory Relief.  Plaintiffs are not obligated to pay any of the amounts submitted by Miami Medical, which have not been paid, identified in the Affidavit of Sarah Bloodgood, attached to Plaintiffs' Motion for Default Final Judgment. Additionally, Plaintiffs are not obligated to pay any claims that have or may be submitted for services provided at Miami Medical in the future that arise out of treatment or services that were not lawful or "lawfully provided" as described herein.

5. Final judgment is entered in favor of Plaintiffs and against Defendant Primo on Count IV – Declaratory Relief.  Plaintiffs are not obligated to pay any of the amounts submitted by Primo, which have not been paid, identified in the Affidavit of Sarah Bloodgood, attached to Plaintiffs' Motion for Default Final Judgment.  Additionally, Plaintiffs are not obligated to pay any claims that have or may be submitted for services provided at Primo

in the future that arise out of treatment or services that were not lawful or "lawfully provided" as described herein.

6. Final judgment is entered in favor of Plaintiffs and against Defendants Lorenzo Felipe and Roberto Lopez on Count V – Conspiracy. Plaintiffs shall have and recover as its money damages from Lorenzo Felipe and Roberto Lopez the principal sum of $945,334.67, reflected in Exhibit 13 to the Complaint and identified in the Affidavit of Sarah Bloodgood, attached to Plaintiffs' Motion for Default Final Judgment, plus post-judgment interest thereon from the date hereof until paid, to be calculated as provided by 28 USC §1961, for all of which let execution issue fourteen days after the entry of this Final Judgment. This Default Final Judgment is joint and several.

7. Final judgment is entered in favor of Plaintiffs and against Defendants Jorge Felipe and Marcos Padron on Count VI – Conspiracy. Plaintiffs shall have and recover as its money damages from Lorenzo Felipe and Roberto Lopez the principal sum of $1,396,490.82, reflected in Exhibits 14-15 to the Complaint and identified in the Affidavit of Sarah Bloodgood, attached to Plaintiffs' Motion for Default Final Judgment, plus post-judgment interest thereon from the date hereof until paid, to be calculated as provided by 28 U.S.C. §1961, for all of which let execution issue fourteen days after the entry of this Final Judgment. This Default Final Judgment is joint and several.

8. Final judgment is entered in favor of Plaintiffs and against Defendants Barry Therapy and Jorge Felipe on Count VII – Unjust Enrichment.  Plaintiffs shall have and recover as its money damages from Barry Therapy and Jorge Felipe the principal sum of $119,594.55, reflected in Exhibit 15 to the Complaint and identified in the Affidavit of Sarah Bloodgood, attached to Plaintiffs' Motion for Default Final Judgment, plus post-judgment

interest thereon from the date hereof until paid, to be calculated as provided by 28 U.S.C. § 1961, for all of which let execution issue fourteen days after the entry of this Final Judgment. This Default Final Judgment is joint and several.

9. Final judgment is entered in favor of Plaintiffs and against Defendant Barry Therapy on Count VIII – Declaratory Relief.  Plaintiffs are not obligated to pay any of the amounts submitted by Miami Medical, which have not been paid, identified in the Affidavit of Sarah Bloodgood, attached to Plaintiffs' Motion for Default Final Judgment. Additionally, Plaintiffs are not obligated to pay any claims that have or may be submitted for services provided at Barry Therapy in the future that arise out of treatment or services that were not lawful or "lawfully provided" as described herein

10. The Court retains and reserves jurisdiction to award attorney's fees and expenses which are not taxable under 28 U.S.C. § 1920.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 29th day of November, 2016.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE